IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SCOTT W. BIRDWELL, ROBBIE EMERY BURKE, as the Special Administratrix of the Estate of Eric Harris, deceased, and TERRY BYRUM, | )<br>)<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Case No. 15-CV-304-TCK-PJC<br>) |
| STANLEY GLANZ, SHERIFF OF TULSA COUNTY, in his individual and official capacities; BOARD OF COUNTY COMMISSIONERS OF TULSA COUNTY, ARMOR CORRECTIONAL HEALTH SERVICES, INC., UNKNOWN NURSE #1, UNKNOWN ATTENDING PHYSICIAN #1, ROBERT C. BATES, MICHAEL HUCKEBY, JOSEPH BYARS, and RICARDO VACA, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## OPINION AND ORDER

Before the Court are Defendant Robert Bates' Motion to Dismiss Complaint (Doc. 36); Defendant Stanley Glanz's Motion to Dismiss (Doc. 37); and Defendants Michael Huckeby, Jospeh Byars, and Ricardo Vaca's Motion to Dismiss (Doc. 38). These Defendants seek dismissal under Federal Rule of Civil Procedure 21 based on misjoinder of Plaintiffs, or, alternatively, under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for relief.

For reasons explained below, the Court concludes that Plaintiffs Robbie Emery Burke and Terry Byrum are misjoined with Plaintiff Scott Birdwell. The Court dismisses Burke's and Byrum's

claims on procedural grounds only. The Court does not reach the merits of these claims, and the Court's dismissal is without prejudice to re-filing.

## I. Factual Allegations and Procedural History

### A. Original Complaint

On May 29, 2015, Plaintiff Scott W. Birdwell ("Birdwell"), by and through his attorney Donald E. Smolen ("Smolen"), filed a Complaint against four Defendants: (1) Stanley Glanz ("Glanz"), who was Sheriff of Tulsa County and head administrator of Tulsa County Sheriff's Office ("TCSO") and the David L. Moss Criminal Justice Center ("Jail") at relevant times; (2) Board of County Commissioners of Tulsa County ("BOCC"); (3) Unknown Nurse #1; and (4) Unknown Attending Physician #1. Based on the allegations in the Complaint, Plaintiff also intended to name Armor Correctional Health Services, Inc. ("Armor"), the health care service provider for the Jail while Birdwell was in custody. (*See* Compl. ¶ 4 (listing Armor as a "Defendant" under section entitled "Parties, Jurisdiction, and Venue").)

On June 7, 2014, while Birdwell was an inmate at the Jail, another inmate struck him above his left eye with an unknown object. Birdwell alleges that the doctor and/or nurse who treated his injury exhibited deliberate indifference to his serious medical needs and violated his Eighth Amendment rights by: (1) refusing to take him to the hospital; (2) failing to thoroughly examine his eye with an x-ray, MRI, or other diagnostic procedure; (3) taking ninety minutes to give him twenty-three stitches; (4) using the wrong anesthetic during the procedure; (5) refusing to remove the stitches until ten days after the procedure; (6) ignoring his complaints of pain and loss of vision before the stitches were removed; and (7) ripping the stitches back open while removing them. (Compl. ¶¶ 14-24.) On June 23, 2014, Birdwell filed a grievance complaining of migraines, damage

to his eye, partial loss of vision, pain in his ear and throat, swelling on the left side of his head, and a possible brain hemorrhage. The following day, on June 24, 2015, Gail Osborn, a nurse employed by Armor, told the physician on call that Birdwell should have been sent to the hospital following the assault.

Birdwell further alleges that the deliberate indifference exhibited by his treating doctor and nurse were consistent with and caused by policies, practices, and customs promulgated by Glanz, BOCC, and Armor. Citing various audits, investigations, and reports conducted from 2007-2011 finding systemic deficiencies in physical and mental health care at the Jail, Birdwell argues that Glanz and Armor were fully aware of these deficiencies and failed to take adequate remedial actions. For example, Birdwell alleged:

> There is a longstanding policy, practice or custom at the Jail of TCSO refusing to send inmates with emergent needs to the hospital for purely financial purposes. This practice has been continued under ARMOR as part of the structure of its business model. That is, under ARMOR's contract with BOCC/TCSO, there are financial disincentives to send patients in need of urgent or even emergent medical attention to outside facilities.

(Compl. ¶ 44.) Birdwell asserted claims against all Defendants for negligence and violation of 42 U.S.C. § 1983, premised upon Eighth Amendment violations. Birdwell asserted separate § 1983 claims against Glanz for supervisory liability and Armor for municipal liability.

### B.     Second Amended Complaint

On June 29, 2015, Smolen filed a Second Amended Complaint ("SAC"). With respect to Birdwell's claims, the SAC sets forth new facts regarding "cronyism" as a basis for Glanz's individual and official liability and corrects the omission of Armor from the case caption. Birdwell's other allegations remain substantially the same as alleged in the original Complaint.

More significantly, the SAC includes two new Plaintiffs. First, the SAC adds Robbie Emery Burke ("Burke"), as the Special Administrator of the Estate of Eric Harris ("Harris"), who is deceased. The incident giving rise to Burke's claims has been the subject of significant national and local media attention. On April 2, 2015, Harris was shot by Defendant Robert Bates ("Bates"), a TCSO reserve deputy, during a sting operation conducted by TCSO's Violent Crimes Task Force. Harris died at a Tulsa hospital shortly after being taken by ambulance from the scene. In addition to Bates, Defendants Michael Huckeby ("Huckeby"), Joseph Byars ("Byars"), and Ricardo Vaca ("Vaca"), all TCSO deputies, were involved in the sting operation. Burke alleges that Bates used excessive deadly force and violated Harris' Fourth Amendment rights by shooting him in the back while he was unarmed, subdued by four deputies, and no longer attempting to flee. Burke alleges that Huckeby used excessive force by kneeling on Harris' head after Harris had already been shot in the back by Bates. Burke further alleges that Defendants Bates, Huckeby, Byars, and Vaca exhibited deliberate indifference to Harris' serious medical needs by "wast[ing] valuable time in getting Harris the emergency medical treatment he obviously needed after being shot," in violation of Harris' Fourteenth Amendment rights. (SAC ¶ 190).

Second, the SAC adds Terry Byrum ("Byrum") as a new Plaintiff. On February 12, 2015, approximately two months prior to Harris' shooting, TCSO Deputy Evan Foster ("Foster") conducted a traffic stop of Byrum, and Reserve Deputy Bates arrived at the scene in a separate vehicle. After Byrum was already subdued on his stomach and in handcuffs, Bates allegedly placed his foot on the back of Byrum's head and upper neck and then administered his Taser on Byrum's leg. Byrum alleges that Bates used excessive force and violated his Fourth Amendment rights by tasing him while he was unarmed, handcuffed, subdued on the ground, and not resisting arrest.

4

Burke and Byrum seek to hold Glanz liable, in both his individual and official capacities, for these alleged constitutional violations. They assert lengthy and detailed factual allegations regarding Glanz's customs, policies, and lack of training that caused the alleged constitutional violations. These include but are not limited to: (1) inadequate training; (2) inadequate supervision; (3) a custom of excessive force by TCSO reserve deputies; (4) failure to enforce policies regarding TCSO reserve deputies; and (5) ratification of decisions to cover up Bates' lack of training and supervision. (SAC ¶¶ 198-202.)

## II. Misjoinder

Birdwell filed the SAC before any Defendant filed a responsive pleading. Under Tenth Circuit law, this was a permissible means of adding parties to the case without leave of Court. *See United States ex. rel. Precision Co. v. Koch Indus., Inc.*, 31 F.3d 1015, 1019 (10th Cir. 1994) ("Because the amendment [adding parties] was made before defendants had filed a responsive pleading, plaintiffs were entitled to the amendment as a matter of right. Thus, the district court erred in its refusal to recognize that right.").

Nonetheless, pursuant to Rule 21, litigants may move to "drop" parties that they believe are misjoined. Rule 21 provides:

> Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party.

(footnote added). A party is "misjoined" and may therefore be "dropped" under Rule 21 when that party "fail[s] to satisfy either of the preconditions for permissive joinder of parties set forth in [Federal Rule of Civil Procedure] 20(a)." 7 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice & Procedure* § 1683 (3d ed. 2001). "The manner in which a trial court

5

handles misjoinder lies within that court's sound discretion," and "dismissal of claims against misjoined parties is appropriate." *Michaels Bldg. Co. v. Ameritrust Co.*, 848 F.2d 674, 682 (6th Cir. 1988) (affirming dismissal of improperly joined defendants); *see also DirecTV, Inc. v. Leto*, 467 F.3d 842, 846 (3d Cir. 2006) ("Although a district court has discretion to choose either severance or dismissal in remedying misjoinder, it is permitted under Rule 21 to opt for the latter only if doing so will not prejudice any substantial right.").

Defendants to the claims brought by Burke and Byrum -- namely, Glanz, Bates, Huckeby, Byars, and Vaca -- have moved the Court to "drop" these two Plaintiffs from this action because they do not meet the permissive joinder standard. Defendants argue that, accepting all their allegations as true, Burke and Byrum are not asserting rights to relief "with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" as Birdwell. Fed. R. Civ. P. 20(a)(1)(A). Defendants further move the Court to exercise its discretion to dismiss, rather than merely sever, these Plaintiffs' claims.

The Court must first determine whether Burke and Byrum are properly joined as Plaintiffs. Rule 20(a) provides:

> a) Persons Who May Join or Be Joined.
> (1) Plaintiffs. Persons may join in one action as plaintiffs if:
> (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> (B) any question of law or fact common to all plaintiffs will arise in the action.

Generally, "[r]ule 20(a) is aimed at promoting trial convenience and expediting the final determination of disputes, thereby preventing multiple lawsuits." *Sprint Commc'ns Co., L.P. v. Theglobe.com, Inc.*, 233 F.R.D. 615, 616 (D. Kan. 2006). Courts construe Rule 20(a) broadly because joinder of claims, parties, and remedies is strongly encouraged. *Id.*

With respect to Rule 20(a)(1)(A), courts consistently interpret "transaction" as having a "flexible meaning" that "may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their *logical relationship*." *Id.* (internal quotation omitted) (emphasis added); Wright, Miller, & Kane, *supra,* § 1653 (approach taken by most courts to Rule 20(a)(1)(A) is "reminiscent of the *logical-relationship* test . . . used in . . . Rule 13(a)," which instructs that "all logically related events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence") (emphasis added). Courts are "inclined to find that claims arise out of the same transaction or occurrence when the likelihood of overlapping proof and duplication in testimony indicates that separate trials would result in delay, inconvenience, and added expense to the parties and to the court." *Sprint Commc'ns Co.,* 233 F.R.D. at 616 (internal quotation omitted).

Even under Rule 20(a)'s liberal standard, the Court concludes that Burke's and Byrum's claims do not arise out of the same transaction or occurrence as Birdwell's claims. Birdwell alleges that the Jail's medical staff exhibited deliberate indifference to his serious medical needs while he was an inmate at TCSO in June 2014. In contrast, Burke and Byrum allege the use of excessive force by TCSO deputies and/or reserve deputies in the field during February and June 2015. The alleged violations were committed several months apart by an entirely different category of alleged state actors (medical staff vs. deputies), in a different location (jail vs. scene of arrest), and pursuant to different policies, practices, customs, and training procedures (those governing medical treatment vs. those governing use of force/use of reserve deputies). Birdwell's claims involve Eighth Amendment protections against cruel and unusual punishment, while Burke and Byrum's principal claims involve Fourth Amendment protections against the use of excessive force. There is no

"logical relationship" between Birdwell's alleged constitutional injury flowing from treatment of his eye injury by members of the Jail medical staff and Burke and Byrum's alleged constitutional injuries flowing from use of force by deputies or reserve deputies at the scene of their respective arrests.

Plaintiffs attempt to link these otherwise unrelated claims by alleging that Glanz's pervasive practice of "cronyism" led to all three constitutional violations:

> All of the claims raised by Plaintiffs stem from policies, procedures and/or customs for which Defendant Sheriff Stanley Glanz ("Sheriff Glanz") and/or Defendant Board of County Commissioners of Tulsa County ("BOCC") bear ultimate responsibility. Whether within the Tulsa County Jail or on the streets of Tulsa County, Birdwell, Harris and Byrum were injured -- and in Harris' case, killed -- as a result of inadequate and unconstitutional training and supervision fostered by Sheriff Glanz. Fundamentally, Sheriff Glanz has exhibited, time and time again, over a period of many years, deliberate indifference to the health and safety of inmates and citizens on the street, alike.
> Sheriff Glanz has displayed a remarkable willingness to place his personal, political and financial relationships over the safety of inmates and the community-at-large. Whether it is his relationship with the CEO of the former private medical provider at the Jail or his relationship with Defendant Robert C. Bates ("Bob Bates" or "Bates"), Sheriff Glanz has continually over-prioritized these relationships at the expense of public safety. Sheriff Glanz's unchecked cronyism has badly clouded his judgment to the great detriment of inmates at the Jail and the public-at-large. With respect to the medical and mental health care provided to inmates in the Jail, the Tulsa County Sheriff's Office ("TCSO") has shown an inclination to conceal the truth, going so far as to condone the falsification of medical records in an effort to hide deficient care. In a similar vein, TCSO has knowingly covered up Bates' lack of necessary field training, as a reserve deputy, and recklessly permitted him to participate in volatile and dangerous law enforcement operations.
> Overall, Sheriff Glanz has overseen operations of the Jail and law enforcement operations in the streets in a common and unconstitutional manner. As detailed herein, Birdwell, Harris and Byrum all fell victim to this unconstitutional and dangerous system in which cronyism trumps safety.

(SAC ¶¶ 1-3.)

However, even accepting the "cronyism trumps safety" policy as the alleged moving force behind all three injuries, this merely creates a common question of law under Rule 20(a)(1)(B). It does not satisfy the first part of the test requiring that the claims arose during the same transaction or occurrence. While "transaction" has a broad meaning, Plaintiffs' proposed meaning would stretch Glanz's tenure as sheriff into one long "transaction" that encompasses every constitutional injury suffered by inmates in the Jail or citizens on the street.

With respect to overlapping evidence or proof, there would be very little duplication of testimony at a trial of Birdwell's claims and a trial of Burke's and Byrum's claims. One would involve expert medical evidence about Birdwell's treatment and policies relating to such treatment, while the others would involve evidence about the use of force and policies relating to the use of force and/or the TCSO's reserve deputy program. Any small overlap in testimony about Glanz's alleged "unchecked cronyism" would be overshadowed by the entirely different testimony regarding the factual scenarios leading to the alleged injuries. The Court must also address practical realities not evident from the pleadings. Harris' shooting was captured on video and received national media attention; any trial involving Harris' shooting will likely receive similar media attention. As with all high-profile trials, jury selection and protection of the jury's deliberations will present unique concerns. The Court finds no logical reason for the same jury to hear evidence about Birdwell's eye injuries occurring in the Jail almost a year prior to Harris' shooting. Permissive joinder is meant to streamline the judicial process and allow logically related claims to be decided together. Joinder in this case would have the opposite result and unnecessarily complicate a high-profile trial. Rather than result in delay or a waste of judicial resources, the Court finds that separate trials would promote expediency, convenience, and justice.

Finally, adoption of Plaintiffs' overly broad permissive joinder argument would allow Smolen to effectively circumvent the Court's random case-assignment procedure outlined in Northern District Local Rule 40.1(a). Smolen's law firm represents plaintiffs in the following lawsuits pending against Glanz, all of which allege various constitutional injuries caused by Glanz's policies, customs, and oversight of TCSO:

> *Cox v. Glanz*, 11-CV-457-JED-FHM (alleging deliberate indifference to medical needs of inmate who committed suicide);
> *Burke v. Glanz*, 11-CV-720-JED-PJC (alleging deliberate indifference to medical and mental health needs of inmate who committed suicide);[1]
> *Poore v. Glanz*, 11-CV-797-JED-TLW (alleging deliberate indifference to safety of inmate who was raped in a known "blind spot" of the jail);
> *Revilla v. Glanz*, 13-CV-315-JED-TLW (alleging deliberate indifference to medical and mental health needs of inmate who twice attempted suicide); and
> *Sanders v. Glanz*, 14-CV-569-JED-FHM (alleging deliberate indifference to medical and mental health needs of inmate suffering from bi-polar disorder who was assaulted in shower).

Smolen chose to add Burke and Byrum to Birdwell's lawsuit; however, under the "cronyism" rationale explained above, he presumably could have selected any of the above-pending cases. The Court need not make any express findings regarding "judge shopping" to support its finding of misjoinder because Rule 20's requirements are not met in this case. However, the Court observes that Rule 20's permissive joinder standard must not be so permissive as to nullify this Court's random case-assignment process. *See Murray v. Sevier*, No. 92-1073-K, 1992 WL 75212, at *1 (D. Kan. Mar. 13, 1992) (noting importance of guarding integrity of random case-assignment process); *Knox v. McGinnis*, No, 90-C-2720, 1990 WL 103277, at *2 (N.D. Ill. July 16, 1990) ("If [the

---

[1] Robbie Emery Burke, the Special Administratrix of the estate of Eric Harris, is also the Special Administratrix of the estate of Elliot Earl Williams, the deceased individual in 11-CV-720.

plaintiff] were allowed simply to be added as a plaintiff to the current action, that would permit the kind of judge shopping that [the] . . . random assignment system was intended to eliminate.").

Having determined that Burke and Byrum are misjoined, the Court exercises its discretion to dismiss their claims. The Court elects dismissal over severance in order to protect the random case-assignment process identified above. Had these three claims been filed together originally, the Court likely would have severed Burke's and Byrum's claims from Birdwell's and allowed both cases to proceed before this Court.[2] However, the fact that misjoinder occurred after the judge was assigned renders dismissal the more appropriate course.

Plaintiffs incorrectly argue that Rule 21 prohibits the Court from dismissing the misjoined claims because it states that "[m]isjoinder of parties is not a ground for dismissing an action." This reflects a misunderstanding of the relief sought. Defendants do not seek dismissal of the original action; they move the Court to drop misjoined parties and therefore dismiss certain *claims* from the action. Birdwell's original action will still proceed before this Court. Further, Plaintiffs have not shown that they will suffer any prejudice as a result of dismissal. Accordingly, the Court finds that dismissal is the proper remedy for misjoinder in this case.

---

[2] This Opinion and Order takes no position on whether Burke's and Byrum's claims are properly joined together. For obvious reasons, however, the analysis would be much different than the Court's analysis here. Burke and Byrum both allege excessive force committed by Bates, while Birdwell alleges deliberately indifferent medical care committed by the Jail's medical staff.

11

### III.     Conclusion

Rule 20(a)(1)(A)'s requirements are not satisfied, and Plaintiffs Burke and Byrum are misjoined with the original Plaintiff. For reasons explained above, the Court elects to dismiss rather than sever their claims. All claims asserted by Burke and Byrum are dismissed without prejudice.

Defendant Robert Bates' Motion to Dismiss Complaint (Doc. 36) is granted based on misjoinder of Burke and Byrum. Defendant Stanley Glanz's Motion to Dismiss (Doc. 37), as it relates to Burke and Byrum's claims, is granted in part based on misjoinder of Burke and Byrum. Defendants Michael Huckeby, Jospeh Byars, and Ricardo Vaca's Motion to Dismiss (Doc. 38) is granted based on misjoinder of Burke and Byrum. All dismissals are without prejudice. Burke and Byrum are terminated as parties, and Defendants Bates, Huckeby, Byars, and Vaca are terminated as parties.

The remaining pending motions include Defendant Armor Correctional Health Care Services, Inc.'s Motion to Dismiss and Motion to Sever (Doc. 18); Defendant Board of County Commissioners of Tulsa County's Motion to Dismiss Complaint and/or Drop Party (Doc. 35); and Defendant Stanley Glanz's Motion to Dismiss (Doc. 37), as it relates to Birdwell's claims. These motions shall be addressed by separate Opinion and Order.

**SO ORDERED** this 4th day of December, 2015.

_/s/ Terence C. Kern_
**TERENCE C. KERN**
**UNITED STATES DISTRICT JUDGE**