**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| SCOTT W. BIRDWELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 15-CV-304-TCK-FHM |
| ) | |
| STANLEY GLANZ, SHERIFF OF ) | |
| TULSA COUNTY, in his individual ) | |
| and official capacities; ) | |
| BOARD OF COUNTY ) | |
| COMMISSIONERS OF TULSA COUNTY, ) | |
| ARMOR CORRECTIONAL HEALTH ) | |
| SERVICES, INC., ) | |
| UNKNOWN NURSE #1, ) | |
| UNKNOWN ATTENDING ) | |
| PHYSICIAN #1, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Before the Court are Defendant Armor Correctional Health Services, Inc.'s Motion to Dismiss and Motion to Sever (Doc. 18), which was also filed on behalf of Unknown Nurse #1 and Unknown Attending Physician #1 ("Armor Defendants"); Motion to Dismiss Complaint and/or Drop Party by Defendant Board of County Commissioners of Tulsa County (Doc. 35); and Defendant Stanley Glanz's Motion to Dismiss (Doc. 37).[1]

**I.    Factual Allegations and Procedural History**

On May 29, 2015, Plaintiff Scott W. Birdwell ("Birdwell"), by and through his attorney Donald E. Smolen ("Smolen"), filed a Complaint against four Defendants: (1) Stanley Glanz ("Glanz"), who was Sheriff of Tulsa County and head administrator of Tulsa County Sheriff's Office

---

[1] The motions to sever and/or drop parties were ruled upon by prior Order dated December 4, 2015. (Doc. 61.) This Opinion and Order addresses all remaining aspects of the motions.

("TCSO") and the David L. Moss Criminal Justice Center ("Jail") at relevant times; (2) Board of County Commissioners of Tulsa County ("BOCC"); (3) Unknown Nurse #1 ("Nurse"); and (4) Unknown Attending Physician #1 ("Physician"). Based on the allegations in the Complaint, Birdwell also intended to name Armor Correctional Health Services, Inc. ("Armor"), the Jail's health care service provider while Birdwell was in custody. (*See* Compl. ¶ 4 (listing Armor as a "Defendant" under section entitled "Parties, Jurisdiction, and Venue").)

On June 29, 2015, Smolen filed a Second Amended Complaint ("SAC"), which included two new plaintiffs and four new defendants. On December 4, 2015, the Court dismissed these new plaintiffs and their claims as misjoined parties. *See Birdwell v. Glanz*, No. 15-CV-304-TCK-PJC, 2015 WL 8056105, at *4 (N.D. Okla. Dec. 4, 2015) (reasoning that there was no "logical relationship" between Birdwell's alleged constitutional injury flowing from treatment of his eye injury by members of the Jail medical staff and other two proposed plaintiffs' alleged constitutional injuries flowing from use of force by deputies/reserve deputies at the scene of their respective arrests).

The allegations relevant to Birdwell's claims are set forth in paragraphs 1-55 and 143-172 of the SAC. On June 7, 2014, while Birdwell was an inmate at the Jail, another inmate struck him above his left eye with an unknown object. He suffered a serious laceration above his left eyebrow. Birdwell conveyed to Physician, Nurse, and others that this was not the extent of his injuries and that he needed further treatment at the hospital. He also requested a thorough examination but was denied an x-ray, MRI, or other diagnostic procedure, despite the "obvious severity" of Birdwell's injuries. (SAC ¶ 23.) Physician used 23 stitches to close the wound, and the procedure lasted ninety minutes. Physician admitted that an experienced emergency room doctor could have completed the

stitches in twenty minutes. Birdwell contends the procedure was prolonged by Physician's use of the wrong anesthesia.

Birdwell was sent back to his cell and instructed to return to the medical unit in five days to have the stitches removed. On the fifth day after his injury, Birdwell made repeated pleas to have the stitches removed, but his pleas were denied. On the tenth day after his injury, Birdwell returned to the medical unit and saw Physician. He told Physician that his "injuries had worsened with time" and that he was experiencing "head pain, loss of vision, and blurred vision." (*Id.* ¶ 29.) Physician denied Birdwell's pleas for medical treatment or hospital testing for his worsening injury and simply ordered Nurse to remove Birdwell's stitches. Physician failed to supervise Nurse's removal of the stitches, even though she had never removed stitches before. Nurse "ripped the sutures back open, resulting in the laceration splitting open," and Birdwell contends the five-day delay "played a substantial role in the sutures splitting open, as Birdwell's skin grew over his sutures." (*Id.* ¶ 32.) It is not clear from the SAC whether Birdwell received any further testing or treatment after removal of the stitches.

On June 23, 2014, Birdwell filed a grievance complaining of migraines, damage to his eye, partial loss of vision, pain in his ear and throat, swelling on the left side of his head, and a "possible" brain hemorrhage. The following day, on June 24, 2015, Gail Osborn, a nurse employed by Armor, told the physician on call that Birdwell should have been sent to the hospital following the assault.

In addition, Birdwell alleges that numerous policies, procedures, practices, and customs promulgated by Glanz, Armor, and/or BOCC caused his injuries. He further alleges that audits of the Jail conducted from 2007-2011 found serious and systemic deficiencies in medical treatment and that these known risks pertain directly to his alleged constitutional deprivation.

3

Based on the above facts, Birdwell asserts (1) negligence claims against Physician, Nurse, Armor, and BOCC; and (2) 42 U.S.C. § 1983 claims against Armor, Physician, Nurse, Glanz, and BOCC based on their deliberate indifference to his serious medical needs in violation of the Eighth Amendment to the U.S. Constitution.

## II.   Rule 12(b)(6) Standard

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether a plaintiff has stated a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (internal quotation marks omitted). "[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Id.* (emphasis in original). The Tenth Circuit has interpreted "plausible," as used by the United States Supreme Court in *Twombly*, to "refer to the scope of the allegations in a complaint" rather than to mean "likely to be true." *Robbins v. Okla., ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.*

The nature of the case determines how specific the allegations must be to establish plausibility. *Id.* at 1248. Because complaints in § 1983 cases typically include claims against multiple defendants, "[t]he *Twombly* standard may have greater bite in such contexts." *Id*. at 1249.

> In § 1983 cases, defendants often include the government agency and a number of government actors sued in their individual capacities. Therefore, it is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state.

*Id.* (emphasis in original); *see also Gray v. Univ. of Colo. Hosp. Auth.*, 672 F.3d 909, 921 n.9 (10th Cir. 2012) ("To provide adequate notice as to the nature of multiple claims against multiple defendants, a complaint must isolate the allegedly unlawful acts of each defendant.") (internal quotation marks omitted).

### III.   Armor Defendants' Motion to Dismiss - § 1983 Claim

Section 1983 provides a cause of action against any person who, acting under color of state law, deprives another of his federal rights. *Howards v. McLaughlin*, 634 F.3d 1131, 1139 (10th Cir. 2011) (emphasis added). This claim has four elements: (1) a violation of rights protected by the U.S. Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a person (4) who acted under color of law. *Summum v. City of Ogden*, 297 F.3d 995, 1000 (10th Cir. 2002). Armor Defendants seek dismissal on three grounds: (1) Birdwell failed to allege any underlying constitutional violation by an Armor employee; (2) Armor employees did not act under color of law while treating Birdwell; and (3) Armor is not a final policymaker for the Jail and cannot be held liable under a municipal liability theory. Armor Defendants also move for dismissal of any claim for punitive damages.

#### A.   Constitutional Violation

"A prison official's deliberate indifference to an inmate's serious medical needs is a violation of the Eighth Amendment's prohibition against cruel and unusual punishment." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). The test has an objective and subjective component. *Id.* The

5

objective component requires inquiry into whether the alleged harm is sufficiently serious, while the subjective component requires inquiry into the state actor's culpability. *Id.* at 753.

### 1. Objective Prong

Birdwell's alleged harm, as articulated in the SAC and his prison grievance filed June 23, 2014, consists of "severe migraines, physical damage to his eye, a loss of partial vision, shooting pains into his ear and throat, swelling on the left side of his head near the location of the laceration, and a possible brain hemorrhage." (Compl. ¶ 34.) This alleged harm is sufficiently serious to satisfy the objective component. *See Mata*, 427 F.3d at 753 (explaining that "the question raised by the objective prong . . is whether the alleged harm . . . is sufficiently serious . . ., rather than whether the symptoms displayed to the prison employee are sufficiently serious"); *Thomas v. Arevalo*, No. 95 CIV. 4704 (SS), 1998 WL 427623, at *6 (S.D.N.Y. July 28, 1998) (conditions that could lead to substantial loss of vision deemed serious medical conditions).

### 2. Subjective Prong

The subjective prong is satisfied if the official knows of and disregards an excessive risk to inmate health or safety. *Maza*, 427 F.3d at 752. The official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and then actually draw the inference. *Id.* Intent can be demonstrated through circumstantial evidence, such as the fact that the risk is obvious. *Id.*

The Supreme Court has made clear that medical negligence or medical malpractice will not satisfy the subjective prong:

> [I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim

6

> of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend evolving standards of decency in violation of the Eighth Amendment.

*Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976). Similarly, "[w]here the necessity for treatment would not be obvious to a lay person, the medical judgment of the physician, even if grossly negligent, is not subject to second guessing in the guise of an Eighth Amendment claim." *Mata*, 427 F.3d at 751.

Certain allegations amount to no more than medical negligence, such as Physician taking too long to complete the stitches, Physician using the wrong anesthesia, and Nurse incompetently removing the stitches. However, for reasons explained below, the following allegations plausibly state a claim for deliberate indifference and preclude dismissal: (1) Physician's failures to perform or order diagnostic testing (SAC ¶¶ 22, 23, 29); (2) Physician allowing Nurse to remove the stitches without supervision (*id.* ¶¶ 30-31); and (3) the delay in removal of Birdwell's stitches (*id.* ¶ 28).

### a. Diagnostic Testing/Ordering Nurse to Remove Stitches

The Tenth Circuit has articulated the following regarding a physician's failure to perform or order testing when presented with an injury or complaints by a prisoner:

> [T]he subjective component is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment. Matters that traditionally fall within the scope of medical judgment are such decisions as whether to consult a specialist or undertake additional medical testing. *See, e.g., Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir.1992) (noting that types of medication prescribed and referrals to specialists are generally matters of medical judgment). The Eighth Amendment's prohibition on cruel and unusual punishment is not violated when a doctor simply resolves the question whether additional diagnostic techniques or forms of treatment is indicated. *Estelle*, 429 U.S. at 107, 97 S. Ct. 285. A claim is therefore actionable only in cases where the need for additional treatment or referral to a medical specialist is obvious. And obviousness

7

> in the circumstances of a missed diagnosis or delayed referral, while not subject to a precise formulation, requires direct or circumstantial evidence that can arise in several different contexts: (1) a medical professional recognizes an inability to treat the patient due to the seriousness of the condition and his corresponding lack of expertise but nevertheless declines or unnecessarily delays referral, *e.g.*, a family doctor knows that the patient needs delicate hand surgery requiring a specialist but instead of issuing the referral performs the operation himself; *see, e.g., Oxendine*, 241 F.3d at 1279; (2) a medical professional fails to treat a medical condition so obvious that even a layman would recognize the condition, *e.g.*, a gangrenous hand or a serious laceration; *see id.*; and (3) a medical professional completely denies care although presented with recognizable symptoms which potentially create a medical emergency, *e.g.*, a patient complains of chest pains and the prison official, knowing that medical protocol requires referral or minimal diagnostic testing to confirm the symptoms, sends the inmate back to his cell. *See, e.g., Mata*, 427 F.3d at 755-59; *Sealock*, 218 F.3d at 1211-12.
>
> This is not to say that a plaintiff faces insurmountable obstacles in showing subjective indifference. If a prison doctor, for example, responds to an obvious risk with treatment that is patently unreasonable, a jury may infer conscious disregard. For that reason, the doctor in *Oxendine* could be liable for failure to treat a gangrenous finger or the physician's assistant in *Sealock* could be liable for failure to summon an ambulance. But where a doctor orders treatment consistent with the symptoms presented and then continues to monitor the patient's condition, an inference of deliberate indifference is unwarranted under our case law.

*Self v. Crum*, 439 F.3d 1227, 1232-33 (10th Cir. 2006).

Although this is a strict standard, the Court concludes that some of Birdwell's allegations are sufficient to plausibly satisfy such standard. Construed favorably, the patient was struck with an object near his eye and repeatedly complained of severe pain, headaches, and loss of vision occurring even ten days after the incident. Yet the doctor failed to further examine Birdwell, order tests, or send Birdwell to the hospital. Instead, he ordered a nurse with no training to remove the stitches and failed to supervise her. Even after the removal process reopened the wound and Birdwell continued to request additional medical treatment, he was denied. If true, and depending on all surrounding circumstances, it is at least plausible that Physician exhibited an "extraordinary degree" of neglect and blatantly ignored an obvious risk of serious harm rather than merely

8

exercised his medical judgment as to the proper course of treatment for Birdwell. *See Rutherford v. Med. Dep't of Dep't of Corr.*, 76 F. App'x 893, 902 (10th Cir. 2003) (plaintiff stated claim for deliberate indifference to serious medical needs by alleging that the correctional facility's medical staff disregarded his complaints about severe back pain, prescribed exercise and physical therapy that worsened his back condition without first performing tests or examination, delayed referring him to a doctor for medical care, allowed orders for referrals to expire, and failed to schedule prescribed tests, surgery, and follow-up care).

### b. Delay in Removing Stitches

The Tenth Circuit has stated that "[a] prisoner may satisfy the subjective component by showing that defendants' delay in providing medical treatment caused either unnecessary pain or worsening of the condition." *Mata*, 427 F.3d at 755. Physician, or some other unknown member of the jail medical staff, allowed ten days to pass before removing the stitches, despite Physician's original order that the stitches be removed within five days and Birdwell's reminders and complaints of pain in his eye area. The alleged consequence of delayed removal was that Birdwell's skin grew over the sutures, which "played a substantial role" in both the sutures and the laceration splitting open. These allegations are sufficient to state a plausible Eighth Amendment claim flowing from delayed medical treatment because the delay allegedly caused unnecessary pain and/or worsening of the condition.

### B. Color of State Law

Because § 1983 is designed to protect individuals from violations of their rights by state actors, the only proper defendants in a § 1983 claim are those who represent the state in some capacity. *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000). Birdwell

alleges Armor and Physician were, at all relevant times, acting under color of state law because Armor: (1) was endowed by Tulsa County with governmental functions, such that Armor became an "instrumentality of the State;" and (2) was charged with implementing and developing the policies of Glanz/TCSO with respect to the medical and mental health care of inmates at the Jail.

The Supreme Court has held that a physician who contracts with the State to provide medical care to prison inmates, even if employed by a private entity, acts under color of state law for purposes of § 1983. *West v. Atkins*, 487 U.S. 42, 54-57 (1988). Applying *West*, courts in this district have held that employees of Armor's predecessor, Correctional Healthcare Companies, Inc. ("CHC"), acted under color of law in treating patients at the Jail. *See Revilla v. Glanz*, 8 F. Supp. 3d 1336, 1338-39 (N.D. Okla. 2014) (denying motion to dismiss where plaintiff made identical allegations as to CHC being endowed with governmental functions and creating policies governing the health care of inmates). Following the reasoning in *Revilla*, the Court finds that Birdwell has adequately alleged that Physician and Nurse were acting under color of law when they allegedly violated Birdwell's rights.

### C. Municipal Liability

Armor argues that it cannot be held liable under a theory of municipal liability because "it does not have the final decision-making authority for the Jail." (Armor Defs.' Mot. for Summ. J. 13.) Birdwell correctly argues, however, that it need not allege this in order to state a claim for municipal liability. Municipal liability attaches either when the "unconstitutional actions of an employee were representative of an official policy or custom of the municipal institution, *or* were carried out by an official with final policy making authority with respect to the challenged action." *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir. 2000). Birdwell seeks to hold Armor liable under

the "official policy or custom" line of cases, *see Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1977), rather than the "official with final policy making authority" line of cases, *see Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986). Armor's argument fails, and there is no need for further analysis at this time.[2]

### D.     Punitive Damages

Armor argues that because punitive damages are not available against municipalities in § 1983 cases, *see City of Newport v. Fact Concerts, Inc.*, 433 U.S. 247, 271 (1981), the Court must dismiss Birdwell's claim for punitive damages against it. Again, the Court agrees with and adopts the reasoning of *Revilla v. Glanz*, 8 F. Supp. at 1342-43, which addressed an identical argument made by CHC:

> [T]he Court is unable to apply the punitive damages immunity afforded municipalities under the *City of Newport* case to CHC, which is a private corporation. The reasoning of *City of Newport* seems largely hinged upon the fact that the traditional purposes of punitive damages (punishment and deterrence) would not be served by imposing punitive damages upon local governments, because taxpayers would foot the bill, governments would likely have to increase taxes or reduce public services, and such an award would place the local government's financial integrity in serious risk. Those same purposes do not apply to a private corporation.

(internal citation omitted). Therefore, punitive damages will remain available at this juncture.

### IV.    Armor Defendants' Motion to Dismiss - Negligence

Armor Defendants argue they are immune from tort liability under the Oklahoma Governmental Tort Claims Act ("OGTCA") because they are "employees" of the State of Oklahoma. *See* Okla. Stat. tit. 51, § 152.1(A) ("The state, its political subdivisions, and all of their

---

[2] For a thorough and well-reasoned discussion of the municipal liability doctrine as applied to CHC, Armor's predecessor at the Jail, see *Revilla*, 8 F. Supp. 3d at 1339-42.

11

employees acting within the scope of their employment . . . shall be immune from liability."). Specifically, all Armor Defendants (Armor, Physician, and Nurse) contend they qualify as "licensed medical professionals under contract with city, county, or state entities who provide medical care to inmates or detainees in the custody or control of law enforcement agencies," which are expressly included in the OGTCA's definition of "employee." *Id.* § 152(7)(b)(7). Again, the Court follows *Revilla* and holds that it is premature to decide this issue because the Court lacks evidence regarding the specific contractual relationships between Armor and/or its employees with Tulsa County and/or TCSO. *See Revilla*, 8 F. Supp. 3d at 1345 (denying motion to dismiss because "it is premature to determine whether § 152(7)(b)(7) covers CHC's employees and/or CHC" due to absence of record evidence regarding privity of contract).

## V. Glanz's Motion to Dismiss

### A. Individual Capacity - Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation omitted). In order to survive a motion to dismiss based on qualified immunity, a plaintiff must "allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights, and that those rights were clearly established at the time." *Robbins*, 519 F.3d at 1249. "This requires enough allegations to give the defendants *notice of the theory* under which their claim is made," but "does not mean that complaints in cases subject to qualified immunity defenses must include all the factual allegations necessary to sustain a conclusion that defendant violated clearly established law." *Id.* (internal quotation omitted and emphasis added).

First, the Court must address whether the alleged facts show that Glanz plausibly violated Birdwell's Eight Amendment rights. Although there are no allegations that Glanz interacted with Birdwell or was specifically aware of Birdwell's injuries, Birdwell's § 1983 claim against Glanz is based on the concept of § 1983 "supervisory liability." To establish a claim of supervisory liability under § 1983, the Tenth Circuit has stated that a plaintiff must plead and ultimately prove that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010) (addressing supervisory liability in context of qualified immunity defense raised by sheriff). Supervisors "may be liable under § 1983 where an affirmative link exists between the unconstitutional acts by their subordinates and their adoption of any plan or policy -- express or otherwise -- showing their authorization or approval of such misconduct." *Id.* at 1199-1200 (alterations and quotations omitted). Stated differently, § 1983 liability may be imposed upon individual supervisors who "act with the requisite degree of culpability to promulgate, create, implement, or otherwise possess responsibility for the continued operation of policies that cause the deprivation of persons' federally protected rights." *Id.* Like any other defendant, a supervisor must be found to have "direct personal responsibility" for the harm and must have committed a deliberate, intentional act. *Porro v. Barnes*, 624 F.3d 1322, 1327-28 (10th Cir. 2010).

Birdwell has alleged that Glanz exhibited deliberate indifference to inmates' medical needs because he was aware of and failed to address "systemic deficiencies in the medical . . . care provided to inmates at the [Jail]." (SAC ¶ 39.) Birdwell has alleged ample facts that plausibly demonstrate Glanz's awareness of these systemic deficiencies in medical care prior to Birdwell's

injuries, including but not limited to: (1) two audits completed by the National Commission on Correctional Health Care in 2007 and 2010, both of which allegedly identified widespread problems with physical and mental health care provided to defendants and the latter of which resulted in the Jail being placed on probation; (2) one audit completed by the U.S. Department of Homeland Security's Office of Civil Rights and Liberties finding that there existed a prevailing attitude of indifference among the medical staff of the Jail; and (3) a third audit completed by the Jail's own retained medical auditor, which found, *inter alia*, that nurses were acting beyond their scope of practice. Particularly relevant to the medical treatment at issue, Birdwell also alleges that "[t]here is a longstanding policy, practice or custom at the Jail . . . of refusing to send inmates with emergent needs to the hospital for purely financial purposes" and that this "practice has been continued under Armor as part of the structure of its business model." (*Id.* ¶ 53.) Birdwell even alleges that under Armor's contract with BOCC/TCSO, "there are financial disincentives to send patients in need of urgent or even emergent medical attention to outside facilities." (*Id.* ¶ 54.) These allegations are more than sufficient to state a plausible claim for supervisory liability against Glanz based on his own intentional conduct of creating policies and/or ignoring risks identified by auditors, which could be deemed causes of the alleged Eighth Amendment violations. *See Maza*, 427 F.3d at 752 ("The official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and then actually draw the inference.").[3]

---

[3] For a discussion of the Tenth Circuit's decision in *Cox v. Glanz*, 800 F.3d 1231 (10th Cir. 2015) (holding Glanz not liable because he lacked personal knowledge of that particular inmate's suicide risk), and why it is limited to the inmate-suicide context, see this Court's decision in *Fisher v. Glanz*, No. 14-CV-678-TCK, 2016 WL 1175239, at *12 (N.D. Okla. Mar. 24, 2016). *See also Sanders v. Glanz*, ––– F. Supp. 3d ––––, 2015 WL 5797026, at *13 (N.D. Okla. Sept. 30, 2015) (Dowdell, J.) (interpreting *Cox* as limited to "one class of jail cases (jail suicide)).

The second prong of the qualified immunity analysis inquires whether the right was clearly established. The Court frames the question as: Was it was clearly established that a jail supervisor who -- (1) intentionally sets policies to disincentivize hospitalization regardless of need; (2) ignores reports of various external and internal auditors declaring a culture of indifference to medical need; and (3) promulgates a custom of requiring nurses to perform beyond the scope of their expertise -- violates a prisoner's Eighth Amendment rights who claims injuries flowing from -- (1) denial of diagnostic testing for an alleged serious injury; (2) refusing to hospitalize for an alleged serious injury; and (3) ordering an untrained nurse to remove stitches. Under *Estelle*, which outlines prisoner's medical rights, and *Dodds*, which outlines methods of proving supervisory liability, it was clearly established that a jail supervisor could be held liable for these types of supervisory decisions and that they could plausibly be deemed a cause of Birdwell's alleged harm. *See Revilla*, 7 F. Supp. 3d at 1216-17 (denying motion to dismiss based on same policies and audits where various plaintiffs alleged different injuries and deaths).

### B. Official Capacity

A claim against Glanz in his official capacity "is essentially another way of pleading an action against the county or municipality" he represents. *Porro*, 624 F.3d at 1328. In this case, that entity is Tulsa County. As with a supervisor, a county or municipality may not be held liable under § 1983 simply because its employees inflict a constitutional injury. *See Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir.1993). Instead, a plaintiff must show: (1) the existence of a municipal policy or custom, and (2) that there is a direct causal link between the policy or custom and the injury alleged. *Hinton*, 997 F.2d at 782 (10th Cir.1993) (citation omitted). A municipal policy or custom can include formal regulations or policies; informal customs amounting to widespread

practices that are so permanent as to constitute a custom or usage; decisions by final policymakers; ratification of employees' decisions by a final policymaker; and failure to train or supervise, so long as failure results from deliberate indifference. *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010).

The Court finds that the county's policies, widespread practices, and failures to remedy known risks posed by its inadequate medical care of inmates bear a sufficient causal link to Birdwell's alleged deprivation in this case. As just one example, denying hospitalization to save money is one alleged policy, and such policy could plausibly have been a driving force behind Physician's allegedly deliberately indifferent decisions regarding Birdwell's care. The allegations against Glanz in his official capacity are sufficient to survive a Rule 12(b)(6) motion. *See Revilla,* 7 F. Supp. 3d at 1218 (holding that plaintiffs stated a claim for municipal liability against Glanz in his official capacity based on custom of systemic, dangerous, and unconstitutional failures to provide adequate medical care to inmates at Jail); *see generally Doe v. Taylor Ind. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994) ("The legal elements of an individual's supervisory liability and a political subdivision's liability []are similar enough that the same standards of fault and causation should govern.").

## VI. BOCC's Motion to Dismiss

With respect to the § 1983 claim, suing BOCC is redundant because Glanz has been named in his official capacity. *See Palmer v. Bd. of Cty. Comm'rs of Sequoyah Cty.*, No. CIV-07-012-RAW, 2007 WL 3407057, at *2 (Nov. 9, 2007) ("Plaintiff has brought suit against the Sheriff in his official capacity, and that is the same as an action against the County. The Board is not a necessary or proper party to this action."). Because he sets Jail policies, Glanz is the more

appropriate official to sue in a representative capacity for the county, rather than BOCC. Accordingly, the § 1983 claim against BOCC is dismissed.

Birdwell argues that, even if not a proper party to the constitutional claim, BOCC, rather than Glanz, is the proper party to a negligence claim under the OGTCA. *See* Okla. Stat. tit. 51, § 163(C) (requiring suits to be against the "political subdivision against which liability is sought to be established" and not against an employee of that subdivision); *see also Speight v. Presley*, 203 P.3d 173, 179 (Okla. 2008) ("Designating an employee in his or her official capacity as a named defendant for this type of claim is improper under the GTCA."). BOCC appears to concede that it is not a "redundant" party with Glanz for purposes of the negligence claim but makes two other arguments in support of dismissal: (1) Birdwell has failed to plead any negligence committed directly by BOCC; and (2) BOCC cannot be held liable for Physician and Nurse's alleged negligence because they are "independent contractors."

BOCC is correct that Birdwell failed to allege any negligence committed by BOCC. However, this does not end the inquiry because "Oklahoma law recognizes the application of the doctrine of respondeat superior to the Governmental Tort Claims Act," *see Speight,* 203 P.3d at 179, and Birdwell seeks to hold BOCC liable under a doctrine of respondeat superior for the alleged negligence of Physician and Nurse. BOCC argues that title 51, section 155(18) of the Oklahoma Statutes exempts it from liability for any alleged negligence committed by Physician and Nurse. This section provides:

> The state or a political subdivision shall not be liable if a loss or claim results from:
> . . .
> 18. An act or omission of an independent contractor or consultant or his or her employees, agents, subcontractors or suppliers or of a person other than an employee of the state or political subdivision at the time the act or omission occurred[.]

Okla. Stat. tit. 51 § 155(18).

The Court finds dismissal premature because the issue of "independent contractor" status cannot be resolved based on the pleadings. The Court will reserve ruling on this issue until it has evidence showing the precise contractual relationships at issue. The Court also finds it prudent to decide the § 155(18) question simultaneously to the § 152(7)(b)(7) question to avoid possible inconsistencies. Accordingly, BOCC shall remain a party to the negligence claim at this time.

## VII.  Conclusion

Defendant Armor Correctional Health Care Services, Inc.'s Motion to Dismiss (Doc. 18), made on behalf of Armor, Physician, and Nurse, is DENIED. Defendant Board of County Commissioners of Tulsa County's Motion to Dismiss Complaint (Doc. 35) is GRANTED as to the § 1983 claim and DENIED as to the negligence claim. Defendant Stanley Glanz's Motion to Dismiss (Doc. 37) is DENIED.

The stay (Doc. 60) is lifted, and the parties are ordered to file a Joint Status Report ten days following entry of this Order.

**SO ORDERED this 6th day of May, 2016.**

_Terence C Kern_
**TERENCE C. KERN**
**UNITED STATES DISTRICT JUDGE**